Good morning. Please, the court, I'm David Coates. I represent the plaintiff appellate Skyline Restoration. We do disaster remediation and restoration work throughout the country. And we're also, we're based in Blue Island, Illinois. We also stand in the shoes of First Baptist Church of Lumberton in Robeson County, North Carolina, as their assignee. It's a statute of limitations case. So if you'll bear with me, I'll kind of run through the timeline, which I don't think is in dispute whatsoever. October 7, 2016, Hurricane Matthew comes from southeastern North Carolina, causes extensive damage to the counties in southeastern North Carolina, including Robeson. It causes extensive damage to the First Baptist Church of Lumberton. And the First Baptist Church of Lumberton is not some small church. It is rather large. And as reflected in the insurance policy declaration pages in the appendix, it consists of five separate buildings. It is a large campus, and it had a great deal of wind damage, a great deal of flood damage. It had no fire damage whatsoever, but a lot of wind damage and a lot of flood damage. So the church enters into a contract with Skyline October 18, 2016. We proceed to work extensively and bring in a massive cruise for the next two months. We end our work on December 15, 2016. The church had an effect, this policy with church mutual among the perils it covers is our wind claims. They have a separate policy with Lloyds, which covers flood damage. As reflected in the bankruptcy proceeding, all claims of Lloyds have settled. And there's no allegation that the church didn't pay their premiums or the policy wasn't in full force in effect. And again, we're dealing with wind damage claims, no fire, no flood. Skyline filed a claim of lien. We've got to do that by statute within 120 days of last following their furnishing of materials to the project on February 16, 2017. On August 30, 2018, Skyline filed their Chapter 11 proceeding, which stayed all collection efforts. And then the critical date is April 4, 2019. As reflected in the complaint, at that point in time, the church sends a comprehensive proof of loss package to church mutual saying for the wind claim, here's all the documents you need. We're making this claim now, please proceed and respond to this claim. And that is the earliest date in which I believe a breach of contract against church mutual can begin. The clock begins to run on that. And so again, no one claims this work wasn't done. No one claims that we did not have massive crews there for eight weeks to do all this restoration work. No one claims that the church was not obligated by the policy as they are to perform immediate mitigation work in order to prevent future damage. As set forth in the brief, they absolutely have that contractual obligation. And so that proof of claims filed by the church on April 4, 2019, no response by church mutual. No response to the church, no response to Skyline. On September 9, 2019, the church files an adversary proceeding in the bankruptcy case. Subsequently church mutual, I mean, excuse me, Skyline and includes the assignment in this particular case. And then November 22, 2019, this action was filed seven months, eight months after the breach of contract. And so there's no dispute that the suit was filed well within three years of every single pertinent date, except for Hurricane Matthew. It was filed three years and seven weeks after Hurricane Matthew. Okay. Can I ask you a question? I definitely understand the kind of state of the land here. If Hurricane Matthew had caused a fire at this church, then you agree, right, that the claim would be governed by 584416 and the accrual date would be the date of the hurricane, right? For the fire portion of that claim, I think you have to separate it out. Can you just tell me why it would make sense to have different statutes of limitations? Like if Hurricane Matthew blew off half the roof and set on fire the other half, you're saying that what the North Carolina legislature intends is that half your claim will be governed by one statute of limitations and half your claim will be governed by a different one. Why would that make any sense? Oddly enough, it's really kind of hard to sit there and correlate 58-3-35 saying insurance company, you cannot limit what somebody can sue you for in the Powell's case that the breach of contract occurs when you breach the insurance contract, not the data loss in 58-44-16 unless you read 58-44-16. Counsel, I'm just asking you, I understand the statutes, and I totally am tracking your statutory argument, but I guess my question is a little different, which is, in your view, what was the North Carolina legislature thinking? Why did they want half of that roof to be governed by one statute of limitations and the other half governed by a different one? Because I'm just saying the statutory scheme, just assuming hypothetically, it's sort of complex and maybe a bit difficult to follow, you'd want to know why your interpretation of it makes sense. I think the North Carolina General Assembly when enacting 58-44-16 intended there to be uniformity with fire insurance policies, and fire insurance policies, period. We want those, and that's why you see in personal lines and commercial lines, they track the exact language of the statute. But with respect to every other apparel, I think the intent of the General Assembly is that the breach of contract occurs on a different date when the breach occurs, not when the loss occurs. And so they wanted it very narrow, and it corresponds with the rules of construction in North Carolina that things that broaden coverage are construed broadly, and things that restrict coverage are construed narrowly. And so we have the policy in the appendix is 190 pages long. On page 32. Yes, Judge Rushing. Fair. There I am. Sorry. I want you to answer Judge Harris's question, so I don't want to take us off on a tangent. But your answer, I think, is getting at a question I had, that there seem to be two questions here, and I want to know your position on each. One is, is this a fire insurance policy? And then, if it is, why aren't all losses under the fire insurance policy treated the same? Which I think is the question that Judge Harris is asking, that would we apply a different statute of limitations to different losses, if all of these losses are occurring under the same policy? Your argument and response seems to be suggesting, well, this policy is not a fire insurance policy. But I don't want to assume what you're about to say. But I see two different arguments happening here. No, Your Honor is correct. There is a fire insurance policy. The policy that's in that appendix is not a standard fire insurance policy in no way shape or form. Three pages, 120 to 122, are the fire insurance policies. North Carolina law seems to treat it as you have a fire insurance policy, and you have to have certain required provisions, and that's your standard fire insurance policy. But, you know, Crawford and these other cases from the North Carolina courts suggest that it's a fire insurance policy if it includes fire insurance. And it may include other things. But that doesn't mean it's not a fire insurance policy. I think, absolutely, the General Assembly did not sit there and say, insuring public, we're going to restrict your rights to sue the insurance company when they breach the contract by saying in 190 page policy, the three pages that are the fire insurance policy means that statute restricts everything you have. So if you breach, and for example, 58-44-16 says this doesn't apply to auto comprehensive and collision. Well, for example, on page 216 of the appendix, you know what the policy has? Auto comprehensive and collision. So does that mean that the policy, that that statute doesn't apply whatsoever? Because the statute says 58-44-16b, with the exception of policies covering auto fire theft, comprehensive and collision and marine and in the marine. And then the policy has coverage for rental car comprehensive and collision. So by the very terms of the statute, that doesn't apply. And so how can you counsel? Yes, ma'am. Can I say so? All right. The actual the statute section 152-12, the one that makes the exception in the first place says that the exception covers any insurance policy that is subject to the three-year limitation contained in 58-44-16. And you already told me, right, that if there had been a fire in this case, that three-year statute, that other statute of limitations from 58-44-16 would have applied. So this insurance policy, whatever you want to call it, it is subject, at least in part, to the statute of limitation contained in 58-44-16. Right. And so they're not asking, I guess I'm stuck on the language of 152-12, which, and this, I guess, just goes back to Judge Rushing's question. It doesn't talk about whether the loss is subject to the three-year limitation. It talks about whether there is an insurance policy that is subject to the limitation. And any insurance policy that includes fire insurance is going to be subject to that separate limitations period. So I'm having trouble making your argument work with this language. I think that would be a boon to the insurance industry if you could sit there and say, I'm going to restrict your rights, and I'm going to reduce the statute of limitations for everything covering this policy because it has, in page 32 of the appendix on the declaration page, it says standard fire policy, insurance policy provisions. So that is a policy within a policy, respectfully, Your Honor. You cannot say every other peril in there, including auto comprehensive coverage, which is exempted from the statute, everything has to fall in. That is topsy-turvy for the way things are construed in North Carolina and insurance policy state by state. It's construed in favor of the insured and in favor of coverage. And just sit there and say, for every single peril in here, you just lost your statute of limitations. It's reduced because part of this policy has a fire insurance policy. And respectfully, I just can't imagine that could be that you can subject the consuming public to that standard. I think that's very... What is the best North Carolina case for that point? Where is there a North Carolina case where there was a policy like this that covers fire, but because the peril was something other than fire, the court said that the statute of limitations does not apply? I don't think there's any case directly on point. I think the F and D case says, you know, that 58-3, that's 35. You cannot reduce the statute of limitations for breach of contract. But I think the cases like the Marshburn case, the Page case and the Quillen case, all dealt with personal line homeowners policies, which are very, very narrow. It's not like a multi-parallel commercial policy that the church has for a multitude of buildings. And so it is completely apples and oranges. A homeowners policy, for example... Yes, ma'am. Judge Harris. Counsel, I take your point about you wouldn't want to upset a lot of expectations in North Carolina, like come in and mess this up. But I find some reassurance in the fact that there are a bunch of horn books in addition to cases, but the horn books all say, look, it seems a little counterintuitive, but North Carolina law just uses the term fire insurance policy interchangeably with property insurance policies. It's an odd quirk of North Carolina law, but it seems to be well understood. So I am less worried because of that about upsetting expectations, but I want to give you a chance to respond. I'm not sure how you can correspond that, Your Honor, with 58-44-16B, that the statute doesn't apply to policies providing first party property coverage for auto comprehensive and published. Yeah, except for auto. I should have said the horn books do cover that. They say, but for auto, we're just using this interchangeably with basic property insurance. Okay. And I think, Your Honor, respectfully, that the auto coverage is basic first party property coverage. And how can you separate those two and say, consuming public now everything in this 190-page policy, you're subject to a restrictive statute of limitations, when you shouldn't be. When that statute says, if the policy covers auto comp and collision like this one does, the statute doesn't apply. And so I think it's to the great detriment of the consuming public that the insurance industry would be allowed to restrict the statute of limitations when people are damaged by breaches of contract by saying, I appreciate that the clock was run out and they breached the contract two years later, but you're on the clock. You've got three years from data loss for stuff completely separate and apart from fire loss, which isn't the issue here. It's like watching the 24 seconds shot clock go off. I think I reserved five minutes, but I think my time is out. You did, Mr. Coates. Thank you. Good morning, your honors. May it please the court, my name is Mihaela Kavulea, and I represent Theopali Church Mutual Insurance. I would like to start by addressing some of Judge this case, your honors involves definitely a standard fire insurance policy that is compliant with North Carolina law. And here are the applicable statutes, the subject insurance policy and the case law interpreting such standard fire insurance policies. They all provide for a three year limitation from the date of last for any lawsuits brought on any claims under standard insurance policy. And to answer some of the honorable Judge Harris and Judge Rushing's questions, I would like to point the court's attention to the most relevant statute here, which is 58-44-16 section 18. And I don't really like to read from statutes during oral argument, but I will read just the relevant portion of it, which particularly says that no suit or action on this policy, this policy means standard fire insurance policy or fire insurance policies. So both standard and fire insurance policy for the recovery of any claim, your honors, this means any claim, not just the fire claim. If the legislature wanted to limit the ability to bring a claim, only a fire claim under this particular statutory provision, they would have said so. They would have known to make that difference to exclude any other coverage, extra coverage that might be afforded under a fire insurance policy. So this is in our interpretation of the statute, there is absolutely no limitation as to the type of claim that is being brought. Just because the fire insurance policy in this case is broader and it provides additional types of coverage, it does not mean that a different statute of applies to that additional type of coverage. And then obviously the case that was also cited in our briefs and was relied on by the district judge in this case also supports this interpretation. There have been cases that interpret losses, especially the case that is cited in the Page v. Lexington. And there, the loss was not a fire loss, it was a pipeline rupture that was an issue and caused the damage, but the court basically applied the same statute of limitation that is applicable to any fire claims. So the three years from the date of the inception of the loss, but that has been interpreted to mean the three years from the date when the damage has occurred that led to the cause of action. So that would be here. Counsel, may I ask you a policy question? Pardon the pun, but I mean public policy in terms of these types of contracts. And I understand very well the questions of Judge Harris and Judge Rushen. We might as well go public. Do you agree that North Carolina, like many states, you sort of presume coverage? I would agree to that, Your Honor, that coverage is presumed, but it wouldn't be presumed that it's excluded from the statute. No, no, it's not a trick question. It's not a trick question. That was just the first part. It presumed, otherwise like in baseball, the tie goes to the runner type thing. So the tie sort of goes to the insurer. Do you agree? Yes, Your Honor. All right. So follow me now. This is a policy in terms of trying to understand it. The general rule is that it's from the time of breach. But of course, by the layout of the statutory provisions of North Carolina, they say no fire insurance. No, it'll be the time of loss, which as you say, is basically the time of the event. But isn't it in a sense, it makes sense that it's fire because you can't hide a fire. Everybody knows when a fire occurs and you know it. But that's not true about, for example, other type damages, the property, for example, like wind, for example. But here, the wind could blow a hundred miles an hour and you look up there and you go, oh, we're fortunate. You're still up there. But you have no idea that the water seeped down walls and things like that and caused all kind of hidden damage because water is very destructive, but silent and invisible. So wouldn't it make sense that the fire, they meant to say, no fire, everybody knows a fire, get started. You know, you all know this. It happened that day and everybody saw the smoke and the fire, but the others, it doesn't make sense from a policy standpoint that there we got to find out that now we know six months later, all the water's damaged sub floors. It's done this. And then you try to file a claim and they said, no, no, we're not going to cover it. Then it starts from the time of the notice, generally as the breach. You follow what I'm saying? So doesn't that make a reason way why fire was narrow because narrow fire is the exception to that federal provision. Go ahead. You can answer. I apologize. I said, go ahead. Thank you very much, Your Honor. What I wanted to say, it's the same obvious event that produces, in this case, a hurricane. It's very obvious. We all know that this is the date of loss. Everybody who has any additional types of losses, they can make supplementary claims. It's not like, and even the statute says three years from the inception of the loss. So the inception of the loss here was Hurricane Matthew. When everybody knew Hurricane Matthew hit and produced this damage to properties. And if there is some hidden damage down the road, the insurer, I apologize, is not precluded from bringing that additional claim to insurer's attention. It's just that the particular lawsuit should be brought within three years from the date of the inception of the loss. And I think that's why the legislature phrased it that way, because sometimes the damages are not apparent right away. There might be some obvious damage, especially after a hurricane, like it is after the fire, Your Honor. Sometimes people don't realize that maybe, I don't know, the electrical system was all burned, or they realize that later on. But the event that produced the damage is clear, both for a hurricane and both for a fire. So that's the inception of the loss. And then I would also like to point out that, you know, maybe in response to opposing counsel's argument that it would be bad policy to restrict the cause of action to three years from the date of loss, I would have to point out, Your Honor, is that the insurer, as I said, the insurer does not, without a remedy, the insurer bargained for a particular contract, was aware that that particular contract includes additional coverage, not just fire coverage, and that the policy itself has the same language limiting lawsuits to three years from the date of the inception of the loss. So it's all under the policy. The policy incorporates the language of 58-44-16, subsection 18. So it's not in violation of any North Carolina law. And then the other thing is sometimes, especially now that we are coming upon the anniversary of Hurricane Florence, insurers are cautious about the running of the three-year anniversary, I wanted to say, about running into statute of limitation issues and have asked insurers for a tolling of that statute of limitation. So it's not like they are without a remedy. And it would be very uncertain and very unclear which statute of limitation applies to such a fire insurance policy. If for each different type of loss, we would go back and forth to different statutes to see which ones govern it, just because it provides additional coverage, that shouldn't be the norm. Because it is clear from the legislature intent that basically the suit limitation applies to any type of claim, Your Honors. And I want to address a novel argument that was made by an appellant in the reply brief and we did not have time to respond to that particular argument that also references a new statutory provision. That argument was not preserved because it wasn't raised in the district court and it was not raised within the opening brief. But even if it were, it is without merit because the section that the appellant relies on, 58-44-20, simply governs additional supplemental coverage, makes no reference to the statute of limitations, and does not have the effect of splitting this policy into a kind of like hybrid policy, fire insurance policy, and then something else that is governed by a different statute of limitation. And so in that respect, the argument regarding section 58-44-20 does not change in any way the analysis. And the district court correctly found that it is the statute of limitation provided in section 58-44-16, subsection 18 that applies to precludes and bars this particular action. And then I would like to also, I don't know if there are any issues, any other questions the court has of me. Can I ask you a question about the UDTPA claim? Just so I understand what the arguments are on appeal. So the district court dismissed that it was not pled properly. There was no sufficient factual allegation of a violation. And then alternatively, under North Carolina law, third parties can't sue other people's insurance companies. Are you defending both of those holdings on appeal? Yes, Your Honor. We are defending both of those holdings. We believe that both are correct. And the district judge correctly found that the allegations were insufficient. There are two main allegations that appellant is relying on even in the opening brief. And then one of them is that Skyline allegedly submitted direct cover claims to Church Mutual for a particular amount that was covered by their invoice for the work that they have done on the church property. And then the second allegation is that Church Mutual failed to act promptly when liability was clear. And that particular second allegation, Your Honors, is very conclusory and it just pays lip service to the statute, to the UDTPA statute, which there's nothing in the allegations in the complaint that would support that. So the fact that it failed to act promptly when liability was clear is just a conclusory statement. And that's why it was insufficient as pled. And then the second argument was, as Your Honor pointed out, the fact that such a UDTPA claim, unfair claim practices act, Your Honor, cannot be assigned under North Carolina law and an assignee, a tort action cannot be assigned to an assignee and the assignee cannot bring such a claim. So we defend both of those decisions by the district judge. We believe those were correct. And then also the district judge's decision on the second issue that's on appeal, the tolling effect of the bankruptcy proceeding, Your Honor, that tolling effect, there was no tolling effect basically. And I would also like to point out that in this case, the skyline had already an assignment of benefits that was given during, when it entered into a remedial work contract with the First Baptist Church of Lamberton. So it was on October 18, 2016, they alleged they had an assignment. And then this is from appellant's own timeline, the allegations and the complaint. And then the second assignment that was allegedly obtained was during the bankruptcy proceedings, when adversary proceedings were initiated within the bankruptcy proceedings. And then as a settlement, skyline obtained this second assignment that assigned the same, all claims that the church had against Church Mutual for the amount of money that the invoice amounted to. So basically skyline had an assignment as of October 18, 2016, and it did not submit a claim until, it did not submit a claim to Church Mutual, could have done so, could have asked for the skyline had an other remedies, like file a claim with the Department of Insurance, a complaint with the Department of Insurance, if it wanted to have its claim resolved. But between October 15, 2016 and August 30th, 2018, when Church Mutual, I think it's, yes, August 30th, that's when the bankruptcy proceedings were initiated. That was almost two years apart and no claim from skyline at that point. And the bankruptcy proceedings around there had no tolling effect in this case, because although skyline claims that it was an assignee of the church, it really, in the adversary proceedings, it wasn't, it was in different, in adversarial positions. And also... Counsel, sorry, sorry, I'm sorry, just because you're talking about assignments. Just before you run out of time, can I take you back to this, the second ground on which the everybody knows you can't assign claims under that statute. But I think if I'm understanding right, what they're saying, your colleague is saying, is that's not what happened. Nobody assigned a claim under the statute. They assigned the insurance proceeds, as you were just discussing in connection with the bankruptcy question. They assigned the insurance proceeds and then we, skyline ourselves, tried to get those insurance proceeds paid. And at that point, the insurance company sort of harmed us directly. We're not proceeding on someone else's claim. The only thing that got assigned was the proceeds themselves. And at that point, you owe, you, the mutual insurance company owe us the same duty that you would anyone who was insured by you. So what's the problem? But your honor, that's the very problem. There's no privity of contract between Church Mutual and skyline. The only way that skyline is able to assert such a claim is because of the assignment of benefits. And that brings me to another issue, that assignment is actually not even valid because it was done without the written consent of the insurance company. Okay, but if we assume that it was valid, I just want to make sure I with this law that sort of aggressively polices insurance company misconduct and say that that only applies, that never applies when insurance proceeds have been assigned to somebody else. Once the insurance proceeds get assigned, insurance companies can do whatever they want to the new holders, the new beneficiaries. Just because they're third parties, they weren't originally insured. At this point, none of the protections of UDPA apply anymore. That just But your honor, yes, they are, but they have different remedies. And it's not under unfair claims practices act. It's they could file a bad faith claim or they could have other other remedies in the law at the law, they don't have that particular one, which you would have to be in privity of contract to be able to assert that and temper the counsel. If there if there were already a judgment here, if, if a court had already said that the church was, was covered, and the policy should be paid, and then there was an assignment. And I realized that's not what's going on here. But with skyline then have the necessary privity to be able to bring this sort of claim. In that case, there are they more like a kind of a motorist who's you know, hit by someone with insurance. And so they're kind of an intended beneficiary, or would that bring them within the the privity? I would say it wouldn't under the North Carolina law, because that would still be an assignment. And under the applicable law, temper the precludes finding a assignment of such claims for claims. So I would still say the answer would be no. I see my time has run up. If there are any questions. Thank you so much. Thank you. Yes, indeed. Mr. Coach, you have some time General Assembly had intended to reduce the rights of policyholders to have their statute limitations for breach of insurance contracts reduced further than fire insurance policies. They would have been explicitly and were done. So within 58 dash 44 dash 16, or elsewhere, I mean, 54 58 dash 44 16. He says that if the if the statute is more liberal than the policy, the statute prevails, which correlates to how things are construed into your honor's point about how kind of all ties go to the insured and not the insurance company. And so if you're on your honor's look at the the insurance policy, you know, endorsement a 100. The first thing is in the insurance policy says, you know, you've got to ensure you've got to sue us within two years of the date of physical loss. And they change that by endorsement to three years in endorsement a 188. But you can understand that it's a slippery slope. And so if the intent of the insurance company is to restrict the rights of the insuring public by reducing their statute limitations, I think that is that is that is a very, a very troubling thing. And there's no all the cases. Again, there's no Supreme Court State Supreme Court case on point. The F&D case says, you know, that 58 dash three dash 35, that predecessor, you can't reduce the statute limitations against an insurance company. That's public policy. We know the state Supreme Court said that. We know the Marshburn case and the page case from the State Court of Appeals talk about homeowners insurance policies, where everything is encapsulated in kind of the same insuring agreement, and that the Quillen case did the same thing. We have not had any case, certainly no state Supreme Court case addressed the issue of a commercial multi parallel policy. Again, 190 page policy, a panoply of risk associated with that in three pages, a standalone fire insurance policy on pages 120 to 122 of the appendix. That is a standalone insurance policy. It doesn't mean it can grab hold and dominate the whole 190 pages and say every risk you've got to sue from the date of loss, even though the breach might occur two years later. I think that's unfair to the consuming public. And I think contrary to what the rules of construction are in North Carolina, and contrary to the intent of the General Assembly. And basically, I know, Judge Harris, you talked about the unfair and deceptive trade practice statute and unfair claim settlement practice statute 58-6311, which correlates to the unfair deceptive trade practice statute. Again, that's a four year statute limitations, the Marks Burn case and the Page case says, that's separate, those claims are viable, not barred by the statute. And I do think that it's different in the cases cited by Church Mutual, that when you are in essence, Church Mutual, I mean, Skyline, and the church are aligned. It's not like a liability claim. It's a property claim for work that was done. Everybody knows the work was done. It's not like I'm in an auto accident, and I'm sued by somebody and I signed some claim for bad faith. That's a personal tort, that's separate and apart. And that's not what the unfair and trade practice statute applies. And that four year statute limitation applies. And again, I also think that when you're dealing with other risks outside of insurance, you run the risk of there being latent damages. You discover that this flood or this wind has weakened the retaining wall, and it's going to fall over two and a half years later. And so I think the fire risk, as Judge Gregory said, is very confined. The fire risk, the fire occurs, there's a damage. But when you have the prospect from other perils of latent damage, and you're telling the consuming public about, well, you know, hope you discover that within three years, if not, you're out of breach of the contract. I think that is unfair to the consuming public. And it's not what was intended by the General Assembly, by enacting that statute restricted to fire insurance policies. And it's 100% clear to you, counsel, that inception of the loss, if there were a latent damage, and it shows up three years later, your walls fall down because they were destabilized by a high wind, that the statute of limitations would not start running when the loss occurs, which is the walls falling down. That's not how I read the language in the Church Mutual policy, you know, the date that the physical damage, and there's a whole host of cases about trigger coverage from North Carolina about when the wall starts to weaken, and this, that, and the other. And it's the date that physical loss occurs, I think, corresponds to that hurricane, where you discover mold and mold develops, and you don't discover it for a while. It's not that they're saying it's not the date of discovery. It's the date when that I understand, not the date of discovery, that would be when you realize that your walls fell down, say you're on vacation, and you came home and right, you wouldn't argue about the date of discovery you would, but it's just not as it's not as completely obvious to me as I think it in some, at least in some of these latent cases, wouldn't actually be when the sort of latent damage manifests, that that's when there's a loss. Until then, your walls were fine, but it doesn't matter. I take your point, and it doesn't matter. I don't want to hold you up. No, I'm out of time, and you'd be surprised, Your Honor, what's not obvious to me, so but I think I'm out of time, unless anyone has any particular questions. If not, thank you very much, and happy first day of fall to the panel and counsel. Counsel, thank you both very much for your arguments and your help to the court. We appreciate it very much. We'd love to be able to come down and shake your hands. We cannot, but nonetheless, we really appreciate that, and we thank you, and we hope that you'll be safe and stay well. Thank you, counsel. Thank you, Your Honor.
judges: Roger L. Gregory, Pamela A. Harris, Allison J. Rushing